JULIO DEL REY (MOTEL EL EJECUTIVO, INC.), recurrente y recurrido, *v.* JUNTA DE APELACIONES SOBRE CONSTRUCCIONES Y LOTIFICACIONES, recurrida; ADMINISTRACIÓN DE REGLAMENTOS Y PERMISOS, OFICINA REGIONAL DE SAN JUAN, interventora recurrida y peticionaria.

*Número:* O-78-106        *Resuelto:* 17 de mayo de 1978

---

*Carlos Bauzá, Roberto Soto Tapia, Hernán E. Jorge* y *Leonor Porrata Doria,* abogados de la Administración de Reglamentos y Permisos, peticionaria; *William Estrella, Igor Domínguez, Enrique González* y *Jesús E. Palmer,* abogados del recurrente y recurrido.

PER CURIAM: Se nos solicita que expidamos *certiorari* para revisar una sentencia del Tribunal Superior, Sala de San Juan, dictada en un procedimiento de revisión de una decisión de la Junta de Apelaciones sobre Construcciones y Lotificaciones. La parte recurrida ha comparecido para oponerse a la expedición del auto. Estamos en condiciones de resolver. Regla 50 de nuestro Reglamento.

Examinemos los hechos. A solicitud de un ciudadano particular, la oficina Regional de San Juan de la Administra-

ción de Reglamentos y Permisos (en adelante ARPE) practicó en mayo de 1976 una investigación de una construcción clandestina en el barrio Camarones de Guaynabo. Se percató que tras una verja de ocho pies de altura se ocultaba una estructura de hormigón de aproximadamente 22 por 400 pies, dividido en 20 unidades o habitaciones, 19 de ellas con marquesina y la restante en el centro preparada para oficina. Dichas unidades fueron construidas para dedicarse al negocio de *motel* y solamente les faltaba la instalación de plafones acústicos y lámparas. Dichas edificaciones se hicieron sin proveerse su dueña, una empresa denominada "Motel El Ejecutivo, Inc.", del correspondiente permiso de construcción expedido por ARPE. Se descubrió, además, que en las mencionadas instalaciones había servicio de energía eléctrica. Investigado este ángulo con la Autoridad de las Fuentes Fluviales resultó que desde 1971 se había dado servicio de electricidad a base de un permiso concedido en el lugar para un taller de mecánica existente en una estructura de madera, habiéndose autorizado un aumento de carga eléctrica en febrero de 1976 a base de una solicitud presentada a la Autoridad sobre requerimiento adicional de energía eléctrica para el taller de mecánica.

Al inquirir ARPE sobre la construcción, los señores Julio y Frank Del Rey, como presidente y vicepresidente, respectivamente, de Motel El Ejecutivo, Inc., mostraron copia fotostática de una supuesta comunicación oficial de la Junta de Planificación, de fecha 13 de marzo de 1973—forma 2.11-A, Revisada—en que se les comunicaba que por encontrarse en zona rural el lugar, no era necesario obtener un permiso de construcción. Esta comunicación resultó ser fraudulenta, sin que se haya podido determinar quién la hizo. Tampoco pudieron los señores Del Rey producir su original. Adujeron que se les extravió. La mencionada fotocopia de la comunicación aludida fue remitida a ARPE por estos señores

el 21 de mayo de 1976, acompañando una solicitud de permiso de uso de las facilidades construidas para motel.

Reunido el Comité de Asesoramiento, Consultas y Revisión de ARPE para considerar la situación, éste acordó dejar la solicitud de permiso de uso pendiente hasta que se investigaran las irregularidades mencionadas. Se citó a todas las partes interesadas a vistas públicas celebradas en la casa alcaldía de Guaynabo ante un oficial examinador, luego de lo cual se sometió un informe y, a recomendación del oficial examinador, se acordó denegar el permiso de uso solicitado. Al tomar este acuerdo se consideraron todas las circunstancias presentes, incluyendo la posibilidad de conceder una variación bajo la subsección 53.00 del Reglamento de Planificación Núm. 4, o de conceder el permiso a base de un "uso no conforme legal" bajo la subsección 54.03 de dicho Reglamento, considerando la posibilidad de que la construcción hubiese comenzado antes de que existiera para el área una reglamentación de construcción que justificara reconocer derechos adquiridos por los señores Del Rey.

No obstante estar en trámite el permiso de uso solicitado por los Del Rey, y sin que éste se les hubiera concedido, se comprobó por ARPE en 3 de septiembre de 1976 que el negocio del motel ya estaba operando y que allí se expendían bebidas alcohólicas. Otra inspección realizada en noviembre de 1976 comprobó que se estaban construyendo cabañas adicionales a las 19 unidades ya existentes. Un esfuerzo realizado por ARPE para paralizar estas obras resultó infructuoso al obtener los señores Del Rey una orden de *injunction* al efecto expedida por el Tribunal Superior, Sala de Caguas, orden que quedó sin efecto por disposición de la Sala de Bayamón, donde fue trasladado el caso a solicitud de ARPE.

Inconformes los Del Rey—o Motel El Ejecutivo, Inc., que para los efectos es lo mismo—con la decisión de ARPE que les denegó el permiso de uso solicitado, apelaron ante la Junta de Apelaciones sobre Construcciones y Lotificaciones.

Esta celebró vistas en cuatro fechas distintas a las cuales comparecieron todas las partes, aportaron sus pruebas, y finalmente la Junta emitió decisión que confirmó la denegatoria de ARPE. Recurrieron entonces los dueños del motel al Tribunal Superior, Sala de San Juan, que por sentencia de 23 de enero de 1978, revocó la decisión de la Junta. El recurso ante nos pretende que revisemos dicha sentencia.

Se basó el Tribunal Superior en que a su juicio la Junta de Apelaciones "no consideró adecuadamente" el planteamiento hecho por los señores Del Rey de que se aplicaron los reglamentos sobre permisos en forma distinta a como se han aplicado a otros moteles. Concluyó que debía devolverse el caso a la Junta, y así lo ordenó, para que ésta considere dicho planteamiento y reciba prueba sobre la concesión de permisos de construcción de otros moteles en el área. Un examen de los autos nos convence que el tribunal recurrido incidió y que debe prevalecer la decisión de la Junta de Apelaciones.

■ En primer lugar, los autos demuestran que los señores Del Rey y Motel El Ejecutivo, Inc., han incurrido en todo el trámite para construir las facilidades del motel, en conducta impropia y altamente censurable. No se proveyeron de un permiso de construcción, y cuando se investiga, producen fotocopia de un documento apócrifo en que supuestamente se les eximía del requisito de un permiso, sin que pudieran dar explicaciones sobre el origen del fraude ni producir el original, diz que porque se extravió. Ocultan la clandestinidad de la construcción tras una verja que impedía ver lo que hacían. Aprovechan una concesión de energía eléctrica hecha a un taller de mecánica que existió en el solar, y logran mediante la falsa representación de que necesitaban carga adicional para el taller, que la Autoridad de las Fuentes Fluviales aumente el servicio de electricidad, cuyo servicio estaba destinado al motel. Ante la investigación de ARPE, ignoran y desatienden la orden de paralización de los trabajos y en su lugar comienzan a operar el negocio y, sin proveerse de

permiso alguno, amplían sus facilidades mediante la construcción de cabañas adicionales a sabiendas de que el negocio de motel (¹) no es permitido en una zona clasificada R-O. (²)

En segundo lugar, la posición de los señores Del Rey, acogida por el tribunal a quo, es que ellos tenían derecho a que se trajeran ante la Junta de Apelaciones los expedientes de otros moteles localizados en el área, a los fines de determinar si la negación del permiso de uso que ahora solicitan es discriminatorio. Independientemente de si tal prueba sería admisible, surge de la transcripción de la vista celebrada ante la Junta el 9 de agosto de 1977 que la Junta les concedió, no diez días, que fue lo que solicitaron para obtener dichos expedientes, sino quince días, y que a pesar de ello, los señores Del Rey renunciaron a ofrecer dicha prueba. (³) La alegación de que se les negó por la Junta la oportunidad de ofrecer documentos referentes a otros moteles carece de base, y no pue-

---

(¹) La palabra "motel" se origina de la composición de dos palabras— *motor hotel*—del inglés, y se aplica generalmente a unas hospederías convenientemente situadas fuera de las zonas urbanas de las ciudades y fácilmente accesibles a los automovilistas en ruta. El *Living Webster Encyclopedic Dictionary of the English Language*, ed. 1975, lo define así: "*A lodging place, esp. designed for motorists, characterized by separate outside entrances to individual sleeping accommodations, and close-by parking.*"

(²) Conforme a los Reglamentos de Planificación se permite la construcción de hoteles de turismo en solares clasificados R-O, pero no moteles. Véase 23 R.&R.P.R. sec. 9-1113(8). Para clasificar como hotel de turismo se requiere, conforme a la citada sección, que tenga "como parte integrante del mismo y en proporción a sus máximas facilidades de acomodo dos o más de las siguientes atracciones típicas de turismo para el servicio eficiente de sus huéspedes: (i) desarrollo de playa o lago con facilidades de baño u otros deportes acuáticos; (ii) piscina de natación con facilidades de baño u otros deportes acuáticos; (iii) facilidades adecuadas para el uso de caballos de silla y excursiones; (iv) canchas de juego o facilidades para otros deportes al aire libre." Debe cumplirse, además, con otros requisitos dispuestos en la citada sección relativos a área de solar por cada habitación; ancho de patios delanteros, laterales y posteriores; espacios para usos accesorios para canchas, piscinas, paseos, áreas de estacionamiento de vehículos, etc.; y condiciones especiales que la Junta de Planificación considere necesarias "para proteger la salud y bienestar general del vecindario."

(³) Aparece el siguiente incidente en la transcripción:

"Lic. Domínguez [abogado de Del Rey]: Bueno, lo único . . . que soli-

den quejarse los Del Rey de no haber presentado aquello a que expresamente renunciaron.

Por otra parte, no vemos la pertinencia de que se investigaran otros moteles del área, habiéndose admitido que dichos moteles radican en distritos R-O, mientras que el solar en que radica el motel de los señores Del Rey radica en un distrito I-1, que es reservado para el establecimiento de industrias livianas. ([4]) Surge del expediente ante nos que dicho solar estuvo clasificado como R-O, pero desde el 21 de mayo de 1971 fue reservado para usos industriales. En esa fecha el Gober-

---

citamos esta mañana permiso para someter que fue lo relativo a los permisos de uso de las certificaciones de los otros moteles.

"Lic. Mercado [asesor legal de la Junta]: Diez días.

"Lic. Domínguez: Diez días que solicitamos.

"Sr. Olivieri [miembro de la Junta]: Le voy a dar quince días.

"Lic. Domínguez: Nosotros tenemos prisa por resolver esto posiblemente antes del diez estén aquí.

"Sr. Olivieri: No, yo espero que esté aquí dentro de dos o tres días les estoy dando los quince días para que exista flexibilidad . . . ."

Más adelante, a la conclusión de la vista:

"Sr. Olivieri: Como lo indicó aquí el compañero Guillermety tenemos el Asesor Legal de la Administración espero que se le faciliten estos documentos a los señores del Rey y por favor también quiero que si es posible se le indique al Administrador de ARPE lo que está pasando para que nos ayude con esto.

"Lic. Soto [abogado de ARPE]: Para que no haya confusión en cuanto a esta solicitud vamos a dejar claro o sea que son los moteles tengo que entenderlo así, se mencionó en un memorando de derecho sometido por la parte aquí apelada demanda en el Tribunal Superior de Bayamón.

"Lic. Domínguez [abogado de Del Rey]: Eso es correcto. Esos son los permisos.

"Lic. Soto: Y entonces la solicitud es que de existir algún expediente y algún permiso con estos casos que se le facilite copia de los permisos.

"Lic. Mercado [Asesor de la Junta]: Los compañeros tienen algún planteamiento de derecho que hacer en cuanto a las teorías de sus casos?

"Lic. Domínguez: Estaba conferenciando con los señores. *Vamos a renunciar a presentar esa prueba* para aligerar los procedimientos aquí.

"Sr. Olivieri [miembro de la Junta]: La prueba de . . .

"Lic. Domínguez: O sea está admitido que los moteles esos ubican no está admitido que tengan permiso o no pero está admitido que ubican en R-O." (Énfasis suplido.)

([4]) 23 R.&R.P.R. sec. 9-311 y ss. Entre los establecimientos permitidos en estos distritos están los talleres de reparación. 23 R.&R.P.R. sec. 9-312(26).

nador aprobó el "Plan de usos de terrenos y transportación del Area Metropolitana de San Juan"; resolución de la Junta de Planificación P.R. AMSJ-1, que hizo reserva del área para usos industriales. Motel El Ejecutivo, Inc., alegó que empezó a construir para mediados del año 1973.

▮ Fuera R-O o fuera I-1 la clasificación del distrito cuando se comenzó a construir el motel, no podía Del Rey y su Motel Ejecutivo prescindir de la obligación de obtener un permiso de construcción antes de iniciar las obras que como hemos visto, no lo obtuvo, pretendiendo valerse de un documento fraudulento para justificar su desobediencia de los reglamentos de Planificación. La solicitud de permiso de uso presentada en 1976 pretende que se convalide un *fait accompli* logrado ilegal y clandestinamente. El supuesto de que otros moteles pudieran haber logrado su permiso de uso mediante tales artimañas no da derecho a los Del Rey a invocar "igual protección de las leyes." Ellos no invocan la aplicación de la ley, sino su desobediencia. La igual protección de las leyes no implica igual protección de la violación de las leyes.

▮ Por otro lado, la concesión de permisos de uso a otros moteles en la zona no crea un estado de derecho a favor de los señores Del Rey. En el supuesto de que la agencia administrativa hubiese cometido algún error en la aplicación de la ley, esa actuación no sería válida. En *E.L.A.* v. *Rivera*, 88 D.P.R. 196 (1963), decidimos que procedía la demolición de una verja cuya altura excedía la reglamentaria a pesar de que un Oficial de Permisos de la Junta de Planificación había autorizado dicha construcción. La altura excesiva de la verja constituía una violación de la ley independientemente de la aprobación del funcionario y procedía su corrección. En *Infante* v. *Tribl. Examinador Médicos*, 84 D.P.R. 308 (1961) y *Mendoza Aldarondo* v. *Asociación Empleados*, 94 D.P.R. 564 (1967), determinamos que un error de un organismo administrativo no obliga a éste, ni impide su corrección. No se

puede pretender, pues, que una actuación administrativa de dudosa corrección impida a la agencia pertinente que se corrija optando por evitar su repetición. Ello no constituye una violación a la igual protección de las leyes.

*Por las razones expresadas, la sentencia del Tribunal Superior, Sala de San Juan, será revocada.*