Brau Ramírez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
I
La recurrente Centro Médico del Turabo, Inc. solicita la revisión de una resolución emitida el 10 de julio de 1996 por la Secretaria de la agencia recurrida, Departamento de Salud del Estado Libre Asociado de Puerto Rico. Mediante el dictamen en cuestión, la Secretaria denegó la solicitud de un Certificado de Necesidad y Conveniencia ("C.N.C."), presentada por la recurrente al amparo de la Ley Núm. 2 de 7 de noviembre de 1975, 24 L.P.R.A. sees. 334 y ss. (Supl. 1996) y del Reglamento Núm. 56 del Departamento de Salud, aprobado el 14 de mayo de 1986, para aumentar 100 camas a la capacidad del Hospital Interamericano de Medicina Avanzada, ("H.I.M.A.").
*982 Mediante resolución emitida el 29 de octubre de 1996 concedimos término a la parte recurrida para expresar su posición en tomo al recurso. Dicha parte compareció por escrito.
Revocamos.
II
Según se desprende del recurso, el 2 de marzo de 1983 el Departamento de Salud de Puerto Rico otorgó a la recurrente un C.N.C.,(Certificado Núm. 83-162), para la construcción de las facilidades de H.I.M.A., en Caguas, Puerto Rico. La recurrente opera dicho hospital general y terciario que ofrece, además de los servicios ambulatorios, servicios especializados como Medicina Nuclear, Tomografía Computarizada e Imágenes de Resonancia.
El 23 de agosto de 1995 la recurrente envió al Departamento de Salud una "carta de intención para someter solicitud de expedición de C.N.C" con el fin de que se autorizara un aumento de la cantidad de 300 camas agudas que posee H.I.M.A. A esos efectos, el 28 de agosto de 1995 presentó su solicitud proponiendo un aumento de 100 camas agudas. Dicha solicitud fue sometida a una evaluación por la Secretaria Auxiliar para la Reglamentación y Acreditación de Facilidades de Salud, ("S.A.R.A.F.S.").
La propuesta fue notificada a los hospitales generales de la región. El único que inicialmente expresó reparos lo fue el Hospital Ryder de Humacao.
Luego de otros trámites, el técnico de evaluación del Departamento de Salud, Harry Santiago Santiago, rindió un informe considerando favorablemente la solicitud de la recurrente. Al realizar dicha evaluación, el Sr. Santiago Santiago utilizó los criterios específicos y generales aplicables a la solicitud de la recurrente, conforme al Reglamento del Departamento de Salud Núm. 56. Presentó las siguientes conclusiones:

"CRITERIOS ESPECIFICOS

1. "Se considerará una norma de 25 camas de cuidado agudo general por cada 1,000 habitantes".

La población proyectada para la Región Este de Salud para el año 1995 es de 549,617 según la Junta de Planificación de Puerto Rico, entonces: 549,617 x 2.5/1,000 = 1,374, camas agudas. Dado que existen 1,226 y el criterio permite 1,374, hay disponibles 148 camas. Conforme a lo anterior, se entiende factible el que la entidad promovente añada cien camas agudas.

GUIAS GENERALES

1. " La viabilidad económica a corto y largo plazo, así como el probable impacto del proyecto en los costos de operación y en los cargos a usuarios por los servicios a ofrecerse por el proponente".

La entidad promovente tuvo una ocupación para el 1994 de 91.36% y hasta el mes de julio de este año su ocupación promedio ha sido de 101.08. De este último porciento los pacientes "Medicare" contribuyeron en un 48.6%. El hospital cuenta con una facultad de 336 y tiene un total de 30 oficinas médicas, las cuales proyecta aumentar mediante la construcción de un edificio de oficinas médicas. A base de lo anterior, se puede concluir que la viabilidad económica del proyecto propuesto descansa en la alta ocupación que sostenidamente ha tenido el hospital durante los últimos años y a la nueva demanda que se generará al aumentar el número de médicos que tendrán oficinas en esa institución.

2. "La relación entre el sistema de salud operante en el área y la transacción propuesta".

En el área de salud de Caguas se ofrecen servicios de salud primarios, secundarios y terciarios. HIM A ofrece servicios terciario, [sic] por lo cual existe relación entre la solicitud de aumento de camas y el sistema de salud operante en el área."

El 27 de febrero de 1996 se celebró la vista administrativa para considerar la solicitud de la recurrente.
*983 La recurrente presentó como testigos al Sr. Carlos M. Piñero y al Sr. Armando Rodríguez Benitez. Presentó, además, un estudio de viabilidad preparado por el Sr. Eladio Cartagena Colón y Sr. Armando J. Rodríguez. Luego de desfilada la prueba, el Hospital Ryder retiró su objeción a la propuesta.
Los otros hospitales no comparecieron a la vista.
El 24 de junio de 1996 la Leda. Wanda I. Rodríguez Hernández, Oficial Examinadora que presidió la vista, suscribió un informe recomendando la denegación del C.N.C. En dicho informe, se adoptaron como determinaciones de hecho las realizadas por el técnico de evaluación, Sr. Santiago Santiago, y se añadieron las siguientes:
7. [L]a ocupación de 101.0% representa la prestación de servicios a 8,471 pacientes para un total de 54,853 días pacientes. El 48.6% de éstos fueron pacientes Medicare.

8. HIMA es el único hospital terciario privado en la Región de Salud de Caguas.

9. El proponente cuenta con el personal administrativo y el personal clínico necesario para operar a expansión propuesta.

10. La inversión total del proyecto es de $7,026,167.00 de los cuales $6,323,551.00 provendrán de la banca en calidad de préstamo.

11. La Tabla de Ingresos y Gastos (Business Plan Income Statement) presentada demuestra la viabilidad económica de la propuesta.

12. En cuanto al personal de enfermería, el proponente está en negociaciones con la Fundación Educativa Ana G. Méndez para establecer una escuela de enfermería.

La Oficial Examinadora concluyó que la propuesta cumplía con la mayoría de los requisitos establecidos en el Reglamento Núm. 56. Sin embargo, rechazó las conclusiones realizadas del técnico Santiago y entendió que debía rechazarse la solicitud porque la recurrente había incumplido con el deber de presentar prueba relativa a la inexistencia de otras alternativas a la transacción para la cual se solicita el certificado o la posibilidad de proveer los servicios contemplados de manera más eficiente o menos costosa que la propuesta por el solicitante; a la relación entre el sistema de salud operante en el área y la transacción propuesta; los factores que afectan la fuerza de la competencia en la oferta de servicios de salud que está bajo consideración; y la eficiencia e idoneidad en el uso de facilidades o servicios existentes similares al propuesto.
Concluyó que:

"Si bien se desfiló prueba en torno a que en el año 1995 se tuvo una ocupación de 101% y en el año 1994 de 91.36%, no se probó la existencia de alternativas de hospitalización de dichos pacientes en otros hospitales de la región (y aun del área) limitándose a indicar que es el único hospital terciario en la Región de Caguas. Además, no se desfüó prueba en el sentido de que dichos pacientes requerían los servicios de un hospital terciario, por lo que se presume que pudieron haber sido atendidos por otras facilidades hospitalarias de la región. Por otro lado, en cuanto a la eficacia e idoneidad en el uso de facilidades o servicios existentes similares al propuesto, de los 6 hospitales generales existentes en la región no se presentó prueba de la utilización de las camas aprobadas a éstos... A tenor con todo lo anterior, no se estableció, ello indistintamente del hecho de que el proponente pueda llegar a ser un hospital que logre utilizar el 100% de sus camas autorizadas, si el aumento en camas afectaría adversamente la solvencia de las facilidades existentes, por lo que la presente propuesta incumple con varios criterios de importancia fundamental..."

*984 Mediante resolución emitida el 10 de julio de 1996, la Secretaria del Departamento de Salud, Dra. Carmen Feliciano de Melecio, adoptó las recomendaciones de la Oficial Examinadora y denegó la concesión del C.N.C. solicitado por la recurrente. Esta última presentó una moción de reconsideración que fue rechazada de plano por la agencia.
Insatisfecha, la recurrente acudió ante este Tribunal.
ni
En su recurso, el recurrente plantea que erró la Secretaria del Departamento de Salud en la apreciación de la prueba presentada, lo que ocasionó que dicha agencia realizara unas Determinaciones de Hecho y Conclusiones de Derecho que no están sostenidas por la prueba, y que conllevaron la denegación de expedición del C.N.C. solicitado.
Según se desprende de la citada Ley Núm. 2, el C.N.C. es un documento que certifica que la facilidad o actividad propuesta es necesaria para la población que va a servir y que no afectará indebidamente los servicios existentes, contribuyendo así al desarrollo ordenado y adecuado de los servicios de salud en Puerto Rico. 24 L.P.R.A. see. 334 (Supl. 1996). Al otorgar o denegar un C.N.C., el Secretario de Salud no sólo concede o deniega un permiso para operar una facilidad de salud, sino que planifica el desarrollo de éstas en las distintas áreas regionales de salud. En este sentido, su dictamen afecta no sólo al peticionario, sino al área de salud de que se trate y tiene efectos generales y regionales. Ruiz Hernández v. Mahíques, 120 D.P.R. 80, 88 (1987).
El Art. V del Reglamento Núm. 56 establece las guías generales sobre evaluación de solicitudes de expedición de C.N.C. Por su parte, el Art. VI indica los criterios específicos a ser considerados en el caso particular de cada facilidad de salud propuesta.
En la situación de autos, el Departamento de Salud concluyó que aunque la propuesta de la recurrente cumplía con la mayoría de los requisitos, la misma incumplió con el deber de presentar prueba sobre los criterios generales mencionados anteriormente, por lo que procedía la denegatoria de la solicitud de expedición del C.N.C. En síntesis, los criterios generales sobre los cuales la recurrente alegadamente no presentó prueba giraban en torno a la capacidad de los otros hospitales para acomodar los pacientes que se estarían atendiendo en las camas adicionales. En otras palabras, la determinación del Departamento de denegar el C.N.C., estuvo basada en la alegada omisión de la recurrente de probar un hecho negativo, i.e., que no existían otras alternativas para atender los pacientes y que el establecimiento de las camas no afectaría las otras facilidades existentes.
Entendemos, que aunque dichos criterios están apoyados por el Reglamento, la agencia recurrida abusó de su discreción al exigirle a la recurrente proveer información específica, a la cual no podía razonablemente tener acceso, sobre la operación de los otros hospitales generales de la Región Este de Salud.
Es importante señalar que en su informe, la Oficial Examinadora reconoció que para el año 1994 H.I.M.A tuvo una ocupación de 91.36% y de 101%, para el año 1995, lo que refleja una creciente demanda para los servicios que justificaba la expansión solicitada. Los otros hospitales del área fueron notificados y ninguno de ellos se opuso a la propuesta. El Hospital Ryder, que fue el único que presentó reparos iniciales, los retiró al escuchar la prueba de H.I.M.A. durante la vista.
Ante este cuadro, resulta especulativa la inferencia de la agencia de que dichos pacientes podrían ser atendidos en los otros hospitales y que el aumento en camas afectaría adversamente la solvencia de las facilidades existentes. Los requisitos del Reglamento Núm. 56 deben ser evaluados de forma razonable y a la luz de la experiencia y el sentido común. Del récord ante nos, no estamos en posición de precisar qué información específica adicional hubiera podido proveer la parte recurrente para apoyar la propuesta.
Según se conoce, las determinaciones de hechos y las conclusiones realizadas por los organismos administrativos especializados merecen gran deferencia y respeto. En Vicente Frau v. Policía de Puerto Rico, _ D.P.R. _ (1996), 96 J.T.S. 148, a la pág. 332; Metropolitana S.E. v. A.R.P.E., 95 J.T.S. 39, a la pág. 767. Sin embargo, dicha deferencia no significa que hayamos renunciado nuestra *985 función revisora en instancias apropiadas y meritorias, pues en el supuesto de que la agencia administrativa hubiese actuado arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción, esa actuación no sería válida. Fuertes v. A.R.P.E., _ D.P.R. _ 1993), 93 J.T.S. 165, a las págs. 11385-11386; Del Rey v. J.A.C.L., 107 D.P.R. 348, 355 (1978); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
Concluimos que del informe preparado por la propia Oficial Examinadora y del informe preparado por el técnico de evaluación de S.A.R.A.F.S. surge que el aumento en el número de camas en los hospitales generales de la Región Este de Salud, debido al aumento poblacional y al desarrollo a largo plazo de H.I.M.A.; y que dicha necesidad no está siendo cubierta por el mercado existente. Si a esto añadimos que los hospitales de la mencionada región no se opusieron a que H.I.M.A. cubriera dicha necesidad y que, además, la recurrente cumplió con todos los criterios generales y específicos exigidos por el Reglamento Núm. 56, resulta forzoso concluir que no existía base racional para que la agencia recurrida denegara la expedición del C.N.C. solicitado.
Por los fundamentos expresados, se revoca la resolución recurrida.
Lo pronunció y manda el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General