Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| LIZ GRISEL ROJAS PÉREZ<br><br>Recurrente<br><br>v.<br><br>NEGOCIADO DE SEGURIDAD DE EMPLEO<br><br>Recurrido | KLRA202400484 | *Revisión* Administrativa Procedente del Departamento del Trabajo, Negociado de Seguridad de Empleo<br><br>Núm.: C-00858-24 |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de noviembre de 2024.

Comparece la señora Liz Grisel Rojas Pérez (señora Rojas Pérez o recurrente) quien nos solicita que revisemos la *Decisión del Secretario del Trabajo y Recursos Humanos* emitida el 12 de julio de 2024. Dicha determinación confirmó la *Resolución* emitida el 9 de mayo de 2024 por el Árbitro de la División de Apelaciones del Departamento del Trabajo y Recursos Humanos.[1] Mediante esta, se ratificó la inelegibilidad de la recurrente para recibir los beneficios de desempleo al amparo programas estatales y federales.

Luego de examinar los argumentos de las partes, resolvemos confirmar la determinación recurrida. Veamos los fundamentos.

**-I-**

De los autos ante nuestra consideración se desprende que la señora Rojas Pérez era empleada del Municipio de Cayey y tenía como segundo empleo un negocio de corredora bienes raíces. En

---

[1] Notificada el 31 de mayo de 2024.

marzo de 2020, la recurrente tuvo que suspender las operaciones de su **segundo empleo** (corredora de bienes raíces) debido a la pandemia del COVID-19. A raíz de esto —*y por creer que cualificaba para ello*— la señora Rojas Pérez presentó una solicitud ante el Negociado de Seguridad de Empleo (Negociado) para obtener los beneficios de Seguro por Desempleo, Asistencia de Desempleo Pandémico (PUA, por sus siglas en inglés) y Asistencia por Pérdida de Salarios.

El **20 de mayo de 2020**, el Negociado emitió una **primera** *Transcripción de Salarios y Determinación Monetaria* de la señora Rojas Pérez. En esta, se indicó que para determinar la elegibilidad de la recurrente para los beneficios, se consideraron los salarios en su periodo básico, el cual consistió de cuatro trimestres naturales comprendidos entre el 1 de enero de 2019 y el 31 de diciembre de 2019. Surge del documento que el periodo de asistencia sería del 2 de febrero de 2020 al 31 de octubre de 2020. Cabe señalar que en la declaración, no se acreditó ningún salario. La determinación fue que la recurrente era **inelegible** para la ayuda solicitada.[2]

Sin embargo, el mismo **20 de mayo de 2020**, el Negociado emitió una **segunda** *Transcripción de Salarios y Determinación Monetaria* de la señora Rojas Pérez. Para esta transcripción, se consideraron los salarios en su periodo básico, que consistió de cuatros trimestres naturales comprendidos entre el 1 de octubre de 2018 y el 30 de septiembre 2019. En esta ocasión, la recurrente acreditó un salario anual de $17,911.60 provenientes del Municipio de Cayey. Así las cosas, el Negociado determinó que era **elegible** para recibir un beneficio de $190.00 semanales para un total de $4,940.00 anuales, desde el 15 de marzo de 2020 hasta el 13 de marzo de 2021.[3]

---

[2] Véase, Apéndice del *Escrito en Cumplimiento de Resolución*, pág. 2.
[3] Véase, Apéndice del *Escrito en Cumplimiento de Resolución*, pág. 3.

El **30 de junio de 2020**, el Negociado emitió una **tercera** *Transcripción de Salarios y Determinación Monetaria* de la señora Rojas Pérez. Para esta, se consideraron los salarios en su periodo básico, que consistió de cuatros trimestres naturales comprendidos entre el 1 de octubre de 2018 y el 30 de septiembre 2019. Nuevamente, la recurrente acreditó un salario anual de $17,911.60 provenientes del Municipio de Cayey. Ante este cuadro, el Negociado determinó que la recurrente era **elegible** para recibir un beneficio de $240.00 semanales, para un total de $<u>3,600.00</u> anuales desde el 15 de marzo de 2020 hasta el 13 de marzo de 2021.[4]

El **17 de febrero de 2021**, la *Unidad de Investigaciones del Negociado* le solicitó al Municipio de Cayey información sobre las semanas que trabajó la señora Rojas Pérez en el municipio y el salario que devengó durante dicho periodo.[5]

El **19 de febrero de 2021**, el Municipio de Cayey brindó la información requerida.

Luego de examinar la información, la *Unidad de Investigaciones y Determinación de Sobrepagos del Negociado* emitió una *Notificación* sobre el *Resultado de Investigación* el **18 de marzo de 2021**. Allí, informó que la señora Rojas Pérez recibió ingresos equivalentes a su salario por su patrono —el Municipio de Cayey— durante el periodo del 21 de marzo de 2020 hasta el 5 de septiembre de 2020. Consecuentemente, el Negociado encontró que la recurrente incurrió en sobrepago en su cuenta del Seguro por Desempleo por la cantidad de $4,870.00, un sobrepago en su cuenta del PUA por la cantidad de $9,000.00 y otro sobrepago en su cuenta de Asistencia por Pérdida de Salarios por la cantidad de $900.00, para un total de $<u>14,770.00</u>. Razón por la cual, se le concedió un

---

[4] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, pág. 4.
[5] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, págs. 5-7.

plazo hasta el 15 de abril de 2021 para refutar los hallazgos de la investigación.[6]

Oportunamente, la señora Rojas Pérez le remitió una *Carta* al Negociado con fecha del **10 de abril de 2021**, en la que expuso varias razones por las cuales estaba inconforme con la investigación. En síntesis, la recurrente alegó que no solicitó el desempleo regular, sino que su solicitud fue dirigida al PUA porque tenía negocio propio. Arguyó que su solicitud incluyó toda la información pertinente a su empleo con el Municipio de Cayey. Adujo que aun cuando devengó un salario por su trabajo con el Municipio de Cayey, su negocio de bienes raíces dejó de producirle un ingreso y que por ello, cualificaba para el PUA. Razonó, que la investigación del Negociado se debía a un error de la agencia en el proceso de la evaluación de su caso. Por lo que indicó sentirse discriminada por ser empleada del sistema público, ya que el Negociado intentaba coartar la oportunidad de obtener ayudas para las cuales cualificaba.[7]

El **5 de mayo de 2021**, la *División de Seguro por Desempleo del Negociado* emitió una *Notificación de Sobrepago* en la cual se le notificó a la señora Rojas Pérez el sobrepago por los beneficios de desempleo ascendente a $4,870.00 correspondiente a los periodos del 21 de marzo de 2020 al 2 de mayo del 2020; al igual que, los periodos del 23 de mayo de 2020 al 5 de septiembre de 2020. Se le informó que tenía derecho a apelar la notificación ante la *División de Apelaciones del Departamento del Trabajo y Recursos Humanos* dentro de quince (15) días a partir de la fecha de la notificación.[8]

El **20 de mayo de 2021**, la señora Rojas Pérez remitió la *Carta de Apelación ante Notificación de Sobrepago* en la cual esbozó los

---

[6] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, pág. 8.
[7] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, pág. 9.
[8] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, pág. 10.

mismos planteamientos ya expuestos en su misiva del 10 de abril y solicitó una audiencia ante un árbitro.[9]

Así las cosas, el **24 de abril de 2024**, la *División de Apelaciones del Departamento del Trabajo y Recursos Humanos* emitió una *Orden y Señalamiento de Audiencia ante el Árbitro Audiencia Telefónica* en la cual señaló la audiencia para el 8 de mayo de 2024.[10] Tal y como se ordenó, la audiencia ante una árbitro se celebró el 8 de mayo de 2024.

El **9 de mayo de 2024**, notificada el **31 de mayo de 2024**, se emitió la *Resolución ante la Árbitro de la División de Apelaciones del Departamento del Trabajo y Recursos Humanos*. En ella, la árbitro realizó las siguientes determinaciones de hechos:

1. Previo a la pandemia COVID-19, la reclamante trabajaba para el patrono, Municipio de Cayey. También tenía un negocio propio de bienes raíces.
2. Tras la pandemia de COVID-19, la parte reclamante solicitó los beneficios del seguro por desempleo al NSE. En su reclamación inicial, la reclamante le informó al NSE que trabajaba para el Municipio de Cayey. Entendía que tenía derecho al beneficio porque su negocio propio se vio afectado por la pandemia.
3. Se le concedieron beneficios semanales por la cantidad de $190 hasta la semana del 30 de junio de 2020 y $240 luego de la semana del 1 de julio de 2020.
4. La parte reclamante continuó sometiendo reclamaciones semanales y recibió pagos ascendentes a $4,870 del Programa de Beneficios de Seguro por Desempleo, $9,000 del Programa Suplementario "Federal Pandemic Unemployment" y $900 del Programa Suplementario "Lost Wages Assistance".
5. En las semanas reclamadas, la reclamante estuvo trabajando para el patrono, Municipio de Cayey.
6. Posteriormente, el NSE revaluó la reclamación y resolvió que la reclamante no tenía derecho s los beneficios recibidos.
7. No hubo intención de engaño por parte de la parte reclamante al solicitar los beneficios de seguro por desempleo o hacer sus reclamaciones semanales.[11]

En síntesis, la árbitro expuso que la señora Rojas Pérez recibió pagos correspondientes al salario por parte del Municipio de Cayey en las mismas semanas en que recibió pagos de seguro por desempleo, al igual que pagos de dos programas suplementarios.

---

[9] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, págs. 11-14.
[10] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, págs. 15-18.
[11] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, págs. 19-20.

También, reconoció que la recurrente informó al Negociado de su empleo con el Municipio de Cayey por lo que, descartó que su caso fuese uno de sobrepago intencional. No obstante, como la señora Rojas Pérez no estuvo desempleada durante las semanas en que recibió los beneficios, no tenía derecho a recibir seguro por desempleo ni los pagos de los programas suplementarios. Por ello, y conforme a lo dispuesto en la Sección 5(j)(2) de la Ley de Seguridad de Empleo de Puerto Rico, Ley Núm. 74 de 21 de junio de 1956, según enmendada (Ley Núm. 74-1956), la árbitro concluyó que procedía confirmar la determinación del Negociado.[12]

Inconforme, el **10 de junio de 2024** la señora Rojas Pérez apeló la determinación de la árbitro ante el *Secretario del Trabajo en la Oficina de Apelaciones*.[13]

El **12 de julio de 2024**, la *Secretaría Auxiliar de Asuntos Legales y Normas* emitió y notificó la *Decisión del Secretario del Trabajo y Recursos Humanos* en la cual se **confirmó** la determinación del Negociado.[14]

Insatisfecha, el **22 de julio de 2024** la recurrente solicitó reconsideración. La *Secretaría Auxiliar de Asuntos Legales y Normas* declaró *No Ha Lugar* la reconsideración el **31 de julio de 2024**.[15]

Inconforme aun, la señora Rojas Pérez acude ante nos mediante el presente recurso de *Revisión Judicial*. Aunque no hizo señalamientos de error, sí indicó que el Negociado incidió al no hacer su trabajo correctamente, puesto que ella proveyó toda la información necesaria cuando solicitó los beneficios de los programas. Por otro lado, y en ánimo de resolver la disputa, la

---

[12] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, págs. 20-22.

[13] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, págs. 23-24.

[14] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, págs. 25-27.

[15] Véase, Apéndice del Escrito en Cumplimiento de Orden del Negociado, págs. 28-31.

recurrente ofreció devolver la suma de $4,870.00 correspondientes al seguro por desempleo, aun cuando considera que no se le debe imputar responsabilidad por un error cometido por el Negociado. No obstante, se negó a devolver la partida correspondiente al PUA ya que arguyó que cumplía con todos requisitos para obtener dicho subsidio.

Oportunamente, el Negociado de Seguridad de Empleo compareció mediante *Escrito en Cumplimiento de Resolución*. En apretada síntesis, alegó que la señora Rojas Pérez pretendía valerse de un error administrativo para reclamar un derecho sobre ciertos beneficios a los que no era elegible.

**-II-**

**A.**

Es harto conocido en nuestro ordenamiento jurídico que los tribunales apelativos estamos llamados a conceder amplia deferencia a las agencias administrativas, pues son estas quienes cuentan con la experiencia y el conocimiento especializado en los asuntos que les han encomendado.[16]

Así, dispone la Sección 4.5 de la *Ley de Procedimientos Uniformes* (LPAU) que *"la revisión judicial de una actuación administrativa debe limitarse a evaluar la razonabilidad de la decisión recurrida, la cual deberá ser sostenida a menos que se demuestre que es arbitraria o caprichosa"*.[17]

Esto se debe a que en nuestra jurisdicción existe una norma reiterada de que las determinaciones de los entes administrativos gozan de "una presunción de legalidad y corrección que los tribunales debemos respetar, mientras la parte que las impugna no presente la evidencia suficiente para derrotarla".[18] Por lo que, las

---

[16] *Moreno Lorenzo v. Departamento de la Familia*, 207 DPR 833, 839 (2021).

[17] *Cruz v. Administración*, 164 DPR 341 (2005); *Ramírez v. Departamento de Salud*, 147 DPR 901 (1999).

[18] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).

decisiones de los organismos administrativos merecen la mayor deferencia judicial.

De esta manera, la revisión judicial de las determinaciones administrativas se limita a revisar si su actuación fue razonable, y solo cederá cuando: *(1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.*[19]

De otra parte, hoy día no contamos con una definición de lo que constituye un *error administrativo*. Sin embargo, a base del análisis de la jurisprudencia se puede inferir que un error administrativo se puede suscitar —tanto por un error de hecho como por un error de derecho—.

En nuestro sistema de justicia gobierna una norma que dispone que *los errores administrativos no crean derechos que obligan a las agencias gubernamentales ni impiden su corrección,* por cuanto una persona no puede ampararse en una actuación incorrecta o ilegal para beneficiarse de esta.[20]

Específicamente, *los errores administrativos no son susceptibles de crear intereses libertarios que activen la protección del debido proceso de ley.*[21] A estos efectos, nuestro Tribunal Supremo ha expresado que *un error administrativo no crea un estado de derecho que oblique [a una] agencia ni impide su corrección.*[22]

---

[19] *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012).
[20] *Matos v. Junta Examinadora*, 165 DPR 741, 756 (2005); *Magriz v. Empresas Nativas*, 143 DPR 63, 71 (1997); *Del Rey v. J.A.C.L.*, 107 DPR 348, 355-356 (1978).
[21] *González v. ELA*, 167 DPR 400, 413 (2006).
[22] *Íd.* Véase, *Santiago v. Dpto. de la Familia*, 153 DPR 208, 218 (2001).

**B.**

La Ley Núm. 74-1956, *supra*, fue aprobada para promover la seguridad de empleos y proveer para el pago de compensación a personas desempleadas mediante la acumulación de reservas.[23] En aras de cumplir dicho propósito, la referida ley prescribe las condiciones para recibir el beneficio diseñado por el estatuto.[24] La Sección 3 dispone que los beneficios del fondo estarán disponibles para los trabajadores que estén desempleados y sean elegibles a beneficios.[25] Para que un trabajador sea elegible para beneficios, este debe notificar, entre otros, una notificación oficial de desempleo.[26]

La Sección 5 dispone que si un reclamante recibe beneficios por un período durante el cual no era elegible a los mismos, se recobraran, sin intereses, dentro del término de cinco (5) años a partir de la fecha en que dicha determinación se convirtió en final y firme mediante:

> A. La deducción de futuros beneficios pagaderos al reclamante a partir de la fecha cuando se determinó el sobrepago. [...]
> B. El establecimiento de un plan de pago justo y razonable sujeto a las condiciones que al efecto prescriba el Secretario mediante reglamento u orden administrativa.
> C. Otros métodos de recuperación que el Secretario, mediante reglamento, acuerdos de entendimiento y órdenes administrativas, entienda necesarios para salvaguardar la solvencia del Fondo.[27]

**-III-**

En resumen, la señora Rojas Pérez acude ante nos y solicita la revocación de la *Decisión del Secretario del Trabajo y Recursos Humanos* emitida el 12 de julio de 2024. Nos solicita que revoquemos la determinación de inelegibilidad para recibir los beneficios de desempleo de los programas estatales y federales.

---

[23] *Castillo v. Dpto. Del Trabajo*, 152 DPR 91, 98 (2000).
[24] *Íd.*, sec. 704.
[25] 29 LPRA sec. 703.
[26] 29 LPRA sec. 704(a)(1)(A).
[27] 29 LPRA sec. 705(j)(2).

Ampara su petición en que ella proveyó toda la información necesaria al Negociado, y fue dicha agencia, quien cometió el error de declararla "elegible".

Si bien es cierto que la señora Rojas Pérez declaró —sin intención de fraude— que trabajaba para el Municipio de Cayey durante el periodo para el cual solicitó los beneficios de desempleo y programas supletorios, no es menos cierto que existe una norma que le prohíbe a las personas ampararse en una actuación incorrecta o ilegal de una agencia para beneficiarse del mismo.[28] Como bien ha señalado nuestro Máximo foro, los errores administrativos no son susceptibles de crear intereses libertarios que activen la protección del debido proceso de ley.[29] Ante este cuadro, el error administrativo del Negociado no crea un estado de derecho en el cual se vea en la obligación de permitirle a la recurrente conservar el sobrepago, ni impide su corrección.

Por lo tanto, aun cuando el negocio de bienes raíces de la señora Rojas Pérez cesó operaciones debido a la pandemia de COVID-19, ésta se encontraba empleada al momento de solicitar el desempleo y los programas suplementarios.

-**IV-**

Por los fundamentos antes expresados, se **confirma** la Decisión del Secretario del Trabajo y Recursos Humanos.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[28] *Matos v. Junta Examinadora, supra; Magriz v. Empresas Nativas, supra; Del Rey v. J.A.C.L., supra.*
[29] *González v. ELA,* 167 DPR 400, 413 (2006).