TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos el Centro Unido de Detallistas de Puerto Rico, Inc. (el C.U.D. o el recurrente), mediante recurso de revisión presentado el 17 de julio de 2003. En su recurso, solicita que revoquemos la resolución emitida el 29 de mayo de 2003 y notificada el 17 de junio del mismo año, por la Junta de Planificación de Puerto Rico (la Junta). Mediante el referido dictamen, la Junta reabrió y autorizó la Consulta Número 1998-17-111-JPU, permitiendo así la continuación de la construcción de cierto proyecto de desarrollo, limitada la misma a una parte del plan original.
Evaluados cuidadosamente y en su totalidad las comparecencias de las partes, los documentos que obran en autos y el derecho aplicable, resolvemos confirmar la resolución recurrida.
*603 I
El 11 de diciembre de 1997, el Departamento de Vivienda de Puerto Rico (Vivienda), publicó un anuncio titulado “Request for Qualifications for Commercial/Office Mixed Use Development”. Ello con miras a promover el desarrollo de una finca con cabida de 26.40 cuerdas, que radica en la Carretera Estatal Número 181, esquina Carretera Estatal Número 8 en el bando Río Piedras ubicado en el Municipio de San Juan. Transcurrido el término disponible para la presentación de propuestas, New Century Development, Inc. (New Century), resultó ser la entidad seleccionada para el desarrollo del proyecto. Al tenor de ello, posteriormente, New Century se obligó a presentar ante la Junta una consulta de ubicación para el proyecto el cual contemplaba la construcción de varias estructuras a utilizarse para el establecimiento de tiendas, facilidades hoteleras y edificios de oficina. En cumplimiento con dicha obligación, New Century inició el referido proceso administrativo el 30 de noviembre de 1998.
Luego de los trámites de rigor, el 22 de junio de 1999, la Junta emitió una resolución mediante la cual aprobó la Consulta Número 1998-17-111-JPU. En consecuencia, dio paso al uso de la finca descrita para el desarrollo del proyecto propuesto. Conforme a la autorización otorgada en la referida resolución, el proyecto sería construido en tres (3) etapas, concentrada cada una de ellas en las facilidades designadas para un mismo tipo de uso. De conformidad con la propuesta de New Century, en la resolución de la Junta quedaron claramente descritas todas las etapas del proyecto con especificación de la porción de la cabida de la finca que ocuparían las estructuras y el uso que se le daría a las mismas. El proyecto fue desglosado de la siguiente manera:

“PRIMERA ETAPA:

Obras de urbanización de todo el predio

1 TIENDA POR DEPARTAMENTO.94.080P/C

OTRA TIENDA POR DEPARTAMENTO.90.720P/C

TIENDAS PARA LA VENTA AL DETAL..242,000P/C

AREAS NO RENTABLES.94,700P/C

EDIFICIOS INDEPENDIENTES PARA COMIDAS LIGERAS, BANCOS Y/O FARMACIAS..37J00P/C

TOTAL..558,600P/C

Se proveerán además 2,604 espacios de estacionamientos.

SEGUNDA ETAPA

AREA RENTABLE (GLA).328,320P/C

AREA NO RENTABLE..95,040P/C

RESTA URANTE..6,000P/C

TOTAL.429,360p/c

Se construirán dos (2) torres de oficinas de once (11) plantas cada una. Al nivel de la azotea se construirá un 
*604
puente peatonal que unirá ambas torres y en el centro de éste se desarrollará un restaurante de 6,000 p/c. Además, se proveerán un total de 1,632 espacios de estacionamientos.

TERCERA ETAPA

CONSTRUCCIÓN DE UN HOTEL DE CATORCE (14) PLANTAS CON FACILIDADES PARA 264 HABITACIONES Y LAS DEMÁS FACILIDADES NORMALES DE UN HOTEL COMO OFICINAS, RECEPCIÓN, ÁREAS DE ACTIVIDADES, COCINAS, ALMACENES Y OTRAS

TOTAL.230,000P/C

Además se proveerán 240 espacios de estacionamientos.

Para el proyecto total se habrán de proveer 4,152 espacios de estacionamiento, de l[o]s cuales 100 serán para impedidos y para carga y descarga se habilitarán 51 espacios de estacionamiento. ”

Según dispuso la Junta al emitir su determinación, la consulta tendría una vigencia de treinta (30) meses contados a partir de la notificación del dictamen, dentro de los cuales el proyecto debía estar en real y efectiva construcción.
Inconforme con dicho dictamen, el C.U.D. recurrió ante este foro (entonces Tribunal de Circuito de Apelaciones). Ante la presentación del referido recurso de revisión, New Century solicitó la desestimación bajo el fundamento de que el foro apelativo carecía de jurisdicción para entender en el caso. Denegada la desestimación solicitada, la parte perdidosa presentó un recurso de certiorari ante el Tribunal Supremo de Puerto Rico quien acogió el planteamiento jurisdiccional mediante sentencia emitida el 29 de junio de 2000. En consecuencia, el Alto Foro ordenó la desestimación del recurso de revisión incoado.
Así las cosas, el 6 de diciembre de 2002, Vivienda presentó una comunicación ante la Junta mediante la cual solicitó una extensión a la vigencia de la consulta autorizada mediante la resolución del 22 de junio de 1999. No obstante, con fecha del 20 de diciembre de 2002, Vivienda envió a la Junta otra misiva mediante la cual modificó su pedido anterior. En esta segunda ocasión, Vivienda expresó que: “en vista de que no se puede autorizar la extensión de la vigencia de la fase comercial de 558,600 PC, por las disposiciones de la Ley Número 91 de 20 de junio de 1998, solicita[ba] que se permit[iera] el desarrollo del área comercial A de 94,080 PC.”
En atención a la petición presentada, el 10 de enero de 2003, la Junta emitió una nueva resolución concerniente a la más reciente solicitud de Vivienda. Mediante ésta, el foro administrativo determinó reabrir y autorizar la consulta en cuestión permitiendo así el desarrollo de las “Fases 2 y 3, y el área comercial identificada como Dept. Store ‘A’, con un área de 94,080 pies cuadrados conforme al plano presentado [ante la] Junta.” Dicha resolución fue notificada el 17 de enero de 2003.
Inconforme con la determinación del organismo administrativo, el 31 de enero de 2003, el C.U.D. presentó una moción de reconsideración al amparo de la Sección 3.15 de la Ley Núm. 170 del 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. § 2165. La Junta, a su vez, mediante resolución emitida en esa misma fecha y notificada el 13 de febrero del mismo año, acogió la reconsideración instada.
Luego de que el 28 de abril de 2003 la Junta decidiera prorrogar el término disponible para actuar sobre la reconsideración instada, el 29 de mayo de 2003, dicho organismo emitió la resolución de la que aquí se recurre. En ésta, declaró no ha lugar la solicitud de reconsideración y, en consecuencia, se reafirmó en la resolución mediante la cual decretó la reapertura y autorización de la Consulta Número 1998-17-111-JPU.
*605 Inconforme aún, mediante la presentación del recurso que aquí nos ocupa, el C.U.D. recurrió del dictamen de la Junta imputándole haber errado de conformidad con el siguiente señalamiento:

“Erró la Honorable Junta de Planificación al reabrir y autorizar la enmienda y solicitud de extensión en la vigencia de la consulta de ubicación número 98-17-111-JPU, luego de expirada la vigencia de la consulta y sin que estuviera en real y efectiva construcción, conforme a la Ley Núm. 91 de 2[0] de junio de 1998. ”

En apoyo a su recurso, el recurrente señala que al momento de autorizarse la reapertura de la consulta, habían transcurrido ya más de los treinta (30) meses que tenía de vigencia la determinación original de la Junta. Arguye que por tratarse de una consulta autorizando un proyecto de más de cien mil (100,000) pies cuadrados, la vigencia de ésta quedó limitada al referido término. A base de ello, plantea que la reapertura y autorización de la consulta era improcedente en derecho.
Como fundamento para su contención, el recurrente argumenta que el Artículo 16 de la Ley Núm. 75 del 24 de junio de 1975, según enmendada, conocida como la Ley Orgánica de la Junta de Planificación de Puerto Rico (Ley Orgánica de la Junta), 23 L.P.R.A. § 62o y la Sección 10.01 del Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Núm. 6031 del 12 de noviembre de 1999 (Reglamento de Procedimientos Adjudicativos), prohíben la extensión concedida. Señala que el término al que hacen referencia las citadas disposiciones es de caducidad por lo cual no admite interrupción alguna. Aduce, por ende, que la solicitud presentada por Vivienda ante la Junta, no incidió de manera alguna en el término de vigencia de la consulta autorizada.
El C.U.D. Alega, además, que en cuanto a la primera etapa del proyecto, no procedía la reapertura y “autorización limitada acierta estructura en eHa-eontemplada-. -En-cuante-a ello, argumenta que el derecho vigente, no vislumbra la posibilidad de que la Junta conceda la reapertura y autorización de la consulta limitada la misma a una parte del proyecto autorizado originalmente. En consecuencia, solicita la revocación de la resolución recurrida.
Vivienda, por su parte, compareció ante nos a los fines de exponer su posición en cuanto a los méritos del recurso mediante escrito presentado el 16 de agosto de 2003. En éste, argumenta que ni el Artículo 16 de la Ley Orgánica de la Junta, supra, ni la Sección 10.01 del Reglamento de Procedimientos Adjudicativos, son de aplicación a la reapertura y autorización de la consulta en cuestión. Arguye que, debido a que la resolución recurrida limita lo dictaminado en cuanto a la fase-de-la-eonstr-ucción del centro comercial proyectado a un predio de menos de cien mil (100,000) pies cuadrados, el término de caducidad al que hace referencia el Artículo 16 de la Ley Orgánica de la Junta, supra, no incide en la corrección del dictamen. Señala que la prohibición a la que alude el recurrente, operaría en el presente caso únicamente si la Junta hubiese dado paso a la construcción del centro comercial en un área de al menos cien mil (100,000) pies.
Con el beneficio de la comparecencia de ambas partes y sus respectivas posiciones claramente expuestas, procedemos a resolver las controversias del caso.
II
Como cuestión de umbral, es menester destacar que en nuestra jurisdicción impera el principio que predica que a las determinaciones administrativas les cobija una presunción de regularidad y corrección. Tal y~como lo ha reiterado el Tribunal Supremo en numerosas ocasiones, la revisión judicial de este tipo de dictamen se limita a determinar si la actuación de la agencia recurrida es arbitraria, ilegal, o tan irrazonable que la misma constituye un abuso de discreción. Otero Mercado v. Toyota de P.R., 163 D.P.R. _ (2005), 2005 J.T.S. 13; Pacheco Torres v. Estancias de Yauco S.E., 162 D.P.R. ___ (2003), 2003 J.T.S. 148; E.L.A. v. Lucas Malavé h/n/c Supermercado Jardines de Caparra, 157 D.P.R. _ (2002), 2002 J.T.S. 103; Municipio de San Juan v. Junta de Calidad Ambiental, 149 D.P.R. 263, 280 (1999); Franco v. Departamento de Educación, 148 D.P.R. 703, 709 (1999).
*606 La presunción de corrección que acarrea una decisión administrativa, deberá ser sostenida por los tribunales a menos que la misma sea derrotada mediante la identificación de prueba en contrario que obre en el expediente del caso. E.L.A. v. P.M.C. Marketing Corp. h/n/c Farmacias El Amal, 163 D.P.R. _ (2004), 2004 J.T.S. 202; A.R.P.E. v. J.A.C.L., 124 D.P.R. 858 (1989); Henríquez v. C.E.S., 120 D.P.R. 194, 210 (1989); Murphy Bernabe v. Tribunal Superior, 103 D.P.R. 692, 699 (1975). Ello debido a que los tribunales deben evaluar con deferencia las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, 123-124 (2000); Facultad para las Ciencias Sociales Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 533 (1993); Asoc. de Doctores en Medicina al Cuidado de la Salud Visual v. Morales, 132 D.P.R. 567, 589 (1993).
Al enfrentarse a una petición para revisar una determinación administrativa, el foro judicial deberá analizar si conforme al expediente administrativo: 1) el remedio concedido fue razonable; 2) las determinaciones de hechos están razonablemente sostenidas por la prueba; y 3) las conclusiones de derecho del organismo administrativo son correctas. P.R.T.C. v. Junta Reglamentadora de Telecomunicaciones, 151 D.P.R. 269, 281 (2000); Municipio de San Juan v. Junta de Calidad Ambiental, supra, a las págs. 279-280; Misión Industrial v. Junta de Planificación y A.A.A., 142 D.P.R. 656, 674 (1997). Véase también Demetrio Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. edición, Bogotá, Forum, 2001, págs. 533-536.
En cuanto a la revisión de las determinaciones de hechos de la agencia, la facultad revisora del foro judicial está limitada por la Sección 4.5 de la L.P.A.U., 3 L.P.R.A. § 2175. La citada sección, establece que “[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.'” Véanse también Rebollo Vda. de Liceaga v. Yiyi Motors, 161 D.P.R. _ (2004), 2004 J.T.S. 4; Asociación de Vecinos del Hospital San Jorge v. United Medical Corp., 150 D.P.R. 70, 75 (2000); Domínguez Talavera v. Caguas Expressway Motors, Inc., 148 D.P.R. 387, 397 (1999). En atención a consideraciones de debido proceso de ley, el expediente administrativo constituirá la base exclusiva para la decisión de la agencia y para la revisión judicial de la misma. Comisionado de Seguros v. Prime Life Partners, Inc., 161 D.P.R. _ (2004), 2004 J.T.S. 105; Torres Acosta v. Junta Examinadora, 161 D.P.R. _ (2004), 2004 J.T.S. 71.
A pesar de que la L.P.A.U. no define el concepto de evidencia sustancial, la jurisprudencia señala que el mismo se refiere a aquella prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Ramírez Rivera v. Departamento de Salud, 147 D.P.R. 901, 905 (1999); Misión Industrial v. Junta de Planificación, 146 D.P.R. 64, 134 (1998); Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 687 (1953). Ello, no requiere que a la luz de la prueba que obre en autos el dictamen administrativo refleje la única conclusión lógica a la que podría llegar un juzgador, pero tampoco deberá sostenerse como correcta una determinación sostenida por un mero destello de evidencia. Id. El criterio rector en estos casos, será la razonabilidad de la determinación de la agencia luego de considerarse el expediente administrativo en su totalidad. Id:, Otero Mercado v. Toyota de P.R., supra; Fuertes v. A.R.P.E., 134 D.P.R. 947 (1993). Por ende, la parte que cuestione en el foro judicial las determinaciones de hechos de una agencia administrativa, tendrá el peso de la prueba para demostrar que éstas no están basadas en el expediente o que las conclusiones a las que llegó el foro administrativo son irrazonables. Ramírez Rivera v. Departamento de Salud, supra, a la pág. 906; Misión Industrial v. Junta de Planificación, supra, a la pág. 131.
A tono con lo dispuesto por ley, existe una práctica judicial claramente establecida de evaluar con un alto grado de deferencia las decisiones de los foros administrativos. Otero Mercado v. Toyota de P.R., supra; Rebollo Vda. de Liceaga v. Yiyi Motors, supra; Misión Industrial v. Junta de Calidad Ambiental, 145 D.P.R. 908, 929 (1998). Dicha deferencia, responde al reconocimiento de que, de ordinario, las agencias administrativas están en mejor posición para hacer determinaciones de hechos al tratar con una materia sobre la cual tienen un conocimiento especializado. Id:, Véanse también Metropolitana S.E. v. A.R.P.E., 138 D.P.R. 200 (1995); Gallardo v. Clavell, 131 D.P.R. 275 (1992). Más aún, cuando la determinación de una agencia esté sustentada por *607 evidencia sustancial que obre en el expediente del caso, el foro judicial debe abstenerse de sustituir el criterio administrativo por el judicial. Otero Mercado v. Toyota de P.R., supra; Reyes Salcedo v. Policía de Puerto Rico, 143 D.P.R. 85, 95 (1997).
No obstante, el que los tribunales den un alto grado de deferencia a los dictámenes de las agencias no significa una renuncia a la función revisora del foro judicial. Rivera Concepción v. A.R.P.E., supra, a las págs. 122-123; Del Rey v. J.A.C.L., 107 D.P.R. 348, 355 (1978). Los tribunales tienen el deber de proteger a los ciudadanos contra posibles actuaciones ultra vires, arbitrarias o inconstitucionales de las agencias. Las determinaciones de los foros administrativos no gozan de deferencia cuando éstos actúan de manera arbitraria, ilegal, irrazonable o ante la ausencia de prueba adecuada o cuando la agencia cometió error manifiesto en la apreciación de la misma. Comisionado de Seguros v. Prime Life Partners, Inc., supra; Torres Acosta v. Junta Examinadora, supra; O.E.G. v. Rodríguez, 159 D.P.R. _ (2003), 2003 J.T.S. 51.
Ahora bien, según lo dispone la citada Sección 4.5 de la L.P.A.U., “[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. ” El razonamiento detrás de esta disposición, es que los tribunales gozan de peritaje en cuanto a las cuestiones legales, por lo cual, en muchas ocasiones, no está presente el interés que justifica la deferencia al criterio administrativo. San Antonio Maritime v. Puerto Rican Cement, 153 D.P.R. _ (2001), 2001 J.T.S. 20; Miranda v. C.E.E., 141 D.P.R. 775, 787 (1996).
No obstante la facultad que posee el foro judicial para revisar las conclusiones de derecho que emitan los foros administrativos, ello no quiere decir que los tribunales deben descartar livianamente las conclusiones de derecho formuladas por las agencias administrativas. La jurisprudencia interpretativa del Tribunal Supremo tiende a señalar que los tribunales deben evaluar con deferencia las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que éstas administran y, por ende, manejan a diario. Ello debido a que, por su familiarización con la materia, las agencias desarrollan un conocimiento especializado sobre ciertas cuestiones legales el cual no debe ser menospreciado y, por el contrario, abona a la correcta interpretación de determinados estatutos y reglamentos. Asociación de Vecinos del Hospital San Jorge v. United Medical Corp., supra; Rivera Rentas v. A & C Development, 144 D.P.R. 450, 461 (1997).
El criterio de revisión en cuanto a las interpretaciones legales hechas sobre los estatutos que las agencias manejan a diario, debe ser también uno de razonabilidad. Aún así, la deferencia que merecen estas interpretaciones, cede ante una actuación irrazonable o ilegal que justifique que el tribunal ejerza su función revisora en protección de la ciudadanía. Pacheco Torres v. Estancias de Yauco S.E., supra. Véase también Adorno Quiles v. Hernández, 126 D.P.R. 191, 195 (1990).
No obstante, en cuanto a las conclusiones de derecho que no envuelven interpretaciones de las leyes y reglamentos que administra la agencia cuya decisión es impugnada ni dentro del área de especialidad de ésta, las mismas son revisables por los tribunales sin limitaciones. Misión Industrial v. Junta de Planificación, supra, a la pág. 134; Rivera Rentas v. A & C Development, supra, a las págs. 462-463.
Por otra parte, es menester destacar que mediante la aprobación de la Ley Orgánica de la Junta, la Asamblea Legislativa creó un organismo gubernamental con la encomienda de velar por el desarrollo integral de Puerto Rico mediante el adecuado balance entre la política pública que requiere se le brinde protección a los recursos naturales del país y la necesidad de hacer uso de éstos de manera que contribuyan al progreso económico en beneficio de la ciudadanía. Véase Artículo 4 de la Ley Orgánica de la Junta, 23 L.P.R.A. § 62c. Al tenor de ello, le fue delegada a esa agencia la función de procurar el adecuado uso de los terrenos en atención a la limitada extensión territorial puertorriqueña. Véase Municipio de San Juan v. Junta de Calidad Ambiental, 152 D.P.R. 673 (2000). A los fines de facilitarle su función, el legislador le confirió a la Junta amplios poderes para clasificar terrenos, así como para adoptar aquellas normas necesarias en cuanto al uso permitido de los mismos. Arenas Procesadas, Inc. v. E.L.A., 132 D.P.R. 593, 607-608 (1993).
*608 Con el propósito de cumplir debidamente con su encomienda y al amparo del poder de reglamentación que le fue delegado, la Junta aprobó el Reglamento de Zonificación de Puerto Rico, Núm. 6211, del 5 de noviembre de 2000 (Reglamento de Zonificación). Mediante la adopción del referido cuerpo reglamentario, la Junta delimitó los contornos de su autoridad para zonificar las áreas geográficas de manera que el uso de todos los terrenos del país quede debidamente regulado. Éste, a su vez, instituye el procedimiento de la consulta de ubicación a los fines de que la Junta:
"... evalúe, pase juicio y tome la determinación que estime pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas, pero que las disposiciones reglamentarias proveen para que se consideren por la Junta de Planificación. ... Sección 2.01 del Reglamento de Zonificación. ”
Tal y como lo ha expresado nuestro Tribunal Supremo, el procedimiento de la consulta de ubicación tiene como propósito evadir la rigidez en el sistema de zonificación, de manera que la clasificación del área en que radique determinada finca no resulte en un impedimento absoluto para que ésta sea destinada a un uso distinto al originalmente contemplado en el ordenamiento territorial. En atención a ello, a la Junta se le reconoce amplia discreción en el ejercicio de su facultad de evaluar las consultas de ubicación, claro está, siempre sujeta la misma al mandato legislativo, las disposiciones reglamentarias aplicables y los pronunciamientos hechos en la jurisprudencia interpretativa. Municipio de San Juan v. Bosque Real, S.E., 158 D.P.R. _ (2003), 2003 J.T.S. 33; T-Jac, Inc. v. Caguas Centrum Limited Partnership, 148 D.P.R. 70, 85 (1999).
Ahora bien, la Sección 11.00 del Reglamento de Procedimientos Adjudicativos provee un mecanismo mediante el cual la Junta podrá conceder prórroga a la vigencia de una consulta. La solicitud al amparo de la referida disposición reglamentaria, debe ser presentada con no menos de treinta (30) días y no más de sesenta (60) de anticipación a la fecha de expiración de la consulta. Además, el proponente deberá señalar los motivos que justifiquen la petición, así como presentar evidencia del progreso alcanzado en la preparación de los documentos y planos que el caso requiera. Según lo dispone la propia Sección 11.00, de ser presentada una solicitud de esta índole a menos de treinta (30) días de la fecha de expiración de la consulta, “ésta será considerada como una solicitud de reapertura para todos los efectos de la Reglamentación vigente, incluyendo el Reglamento de Cobro de Derechos.”
No obstante, la autorización contenida en la citada disposición del Reglamento de Procedimientos Adjudicativos, el Artículo 16 de la Ley Orgánica de la Junta, supra, excluye la posibilidad de que el foro recurrido autorice prórrogas o reaperturas a consultas que permitan la construcción de centros comerciales en aquellos casos en que los mismos tengan una extensión de más de cien mil (100,000) pies cuadrados. El citado precepto estatuario en lo pertinente lee:

“La Junta adoptará, entre otros, los siguientes reglamentos:

1. Reglamento de Zonificación. -

(a)...”

En los casos en que se apruebe la consulta de ubicación para la construcción de un centro comercial de cien mil (100,000) o más pies cuadrados de área neta de venta por la Junta de Planificación de Puerto Rico, dicha aprobación tendrá una vigencia de treinta (30) meses, a partir de la notificación de la aprobación de la consulta de ubicación por la Junta de Planificación de Puerto Rico, dentro de cuyo término el centro comercial deberá estar en real y efectiva construcción. Se entenderá por real y efectiva construcción el inicio de las obras de urbanización y construcción permanentes de una estructura sobre el terreno, es decir, cualquier obra que vaya más allá de la etapa de excavación, conforme definido en el Reglamento para Procedimientos Adjudicativos de la 
*609
Junta de Planificación, vigente al 21 de marzo de 1995. Disponiéndose, que una vez transcurrido el término de treinta (30) meses antes mencionado, sin que el centro comercial se encuentre en real y efectiva construcción, la aprobación correspondiente perderá vigencia. La Junta no aprobará prórroga o reapertura alguna que se presente a los fines de solicitar una extensión al término de vigencia de la consulta de ubicación aprobada. La caducidad del término de vigencia de la aprobación de una consulta de ubicación para la construcción de un centro comercial no será obstáculo para que posteriormente se pueda presentar ante la Junta una solicitud como un caso nuevo.

(b)...".

De conformidad con los términos de la delegación hecha a la Junta, la Sección 10.01 del Reglamento de Procedimientos Adjudicativos se expresa de igual manera en cuanto a los límites a la discreción del referido organismo para otorgar extensiones a la vigencia de las consultas para el desarrollo de centros comerciales así como para la reapertura de las mismas.
Ahora bien, tal y como surge de las disposiciones legales aplicables, la limitación a la discreción de la cual goza la Junta para prorrogar la vigencia de una consulta o reabrir la misma, se circunscribe a casos en los que el proyecto para el cual se solicite tenga como fin el desarrollo de un centro comercial. Según lo definen tanto el Reglamento de Zonificación como el Reglamento de Procedimientos Adjudicativos, con respecto a los asuntos a tramitarse ante la Junta, el término centro comercial significa “[a]quel desarrollo comercial con un área neta de ventas de cien mil (100,000) pies cuadrados o más. ” 
III
En él casó- que nos ocupa, debemos atender en primer orden la controversia referente a la determinación de la agencia de autorizar la reapertura de la consulta de ubicación amparada en su interpretación de que la prohibición legal para dicha autorización, opera únicamente en cuanto a la primera etapa del proyecto según descrito éste en la resolución de la agencia. A pesar de que la Junta no lo expresa así claramente en su dictamen, del análisis de los documentos que obran en autos surge que dicha interpretación versa sobre la definición que en la reglamentación apbcable se le da al término “centro comercial”.
Como reseñáramos, la definición del aludido término formulada en los reglamentos de la Junta, a pesar de lo escueta de la misma, arroja luz sobre el dictamen hecho por el foro administrativo y, por ende, de su conclusión de que láTeapértunrde la consulta no estaba vedada. A los efectos, debemos señalar que la definición provista en la reglamentación apbcable establece con meridiana claridad que para que un área a desarrollarse sea considerada como un centro comercial, la misma debe contemplar la asignación de una cantidad determinada de su espacio al negocio de las ventas.
Tal y como puede observarse de la descripción total del proyecto, la primera etapa de éste es la única de ellas que, de acuerdo con el uso al que se destinaría el desarrollo, dedicaría más de cien mil (100,000) pies cuadrados a negocios dedicados a las ventas. Al tenor de ello, la Junta concluyó que la prohibición para autorizar la reapertura de la consulta operaba únicamente en tomo a la primera etapa del proyecto. Ello debido a que ninguna otra era compatible con la definición de término “centro comercial” adoptada en los reglamentos de la agencia. En vista de ello, la Junta no estaba impedida de dictaminar como lo hizo en cuanto a la segunda y la tercera etapa del desarrollo proyectado.
Por otra parte, en el presente recurso se cuestiona la validez de la determinación administrativa autorizando la continuación de la construcción de cierta edificación que sería destinada a la operación de una tienda por departamentos. En cuanto a dicha contención, el recurrente alega que el derecho vigente no provee para que la Junta conceda la reapertura de una consulta hmitada a una parte del proyecto originalmente autorizado.
*610 No obstante, según surge de los autos, la parte de la primera etapa del proyecto cuya continuación la Junta autorizó mediante la resolución de la que aquí se recurre, estaba debidamente particularizada en la descripción del plan original según éste fue reseñado en los documentos de la agencia. Por lo tanto, esta no es una mera fragmentación del proyecto hecho por la Junta. Por el contrario, la misma es una parte de éste que, por estar individualizada en la planificación del proyecto, la agencia entendió que era viable desarrollar sin que fuera necesario para ello la construcción de la primera etapa en su totalidad. Es decir, debido a que en el proyecto que originalmente autorizó la Junta, la parte de la etapa de construcción del centro comercial sobre la cual incide la resolución recurrida estaba contemplada de manera específica e individual, no se trata aquí de una porción abstracta e indeterminada no susceptible de ser objeto de un dictamen dando paso a su edificación con independencia de la determinación que se tome en cuanto a las otras paites de la fase comercial en cuestión. [S] Toda vez que la parte de la fase comercial del proyecto afectada por la resolución recurrida, ocupa un espacio menor de cien mil (100,000) pies, la Junta interpretó que en cuanto a ésta no operaba prohibición alguna para permitir la reapertura de la consulta.
En vista de que se trata aquí de la interpretación que hizo el organismo administrativo con respecto a disposiciones legales altamente técnicas que maneja a diario y, por ende, concerniente a un área del derecho sobre el cual la Junta posee un conocimiento especializado, la misma es merecedora de deferencia por parte de esta curia. Toda vez que la referida interpretación legal no nos parece irrazonable y en atención a la amplia discreción que le ha reconocido nuestro Tribunal Supremo a la Junta para entender en los procesos de consultas de ubicación, la determinación emitida en el presente caso debe ser sostenida.
IV
Por los fundamentos expuestos, se confirma la resolución emitida por la Junta de Planificación de Puerto Rico el 29 de mayo de 2003 y notificada el 17 de junio del mismo año.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones