Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| JAVIER LAMOSO GROWPONICS-PR, LLC  Apelante  v.  DEPARTAMENTO DE LA VIVIENDA  Apelado | TA2025RA00393 | REVISIÓN JUDICIAL procedente del Departamento de la Vivienda  Revisión Administrativa número: AR-23-00280 |
| --- | --- | --- |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 20 de febrero de 2026.

Comparece ante este tribunal apelativo, Growponics-PR LLC (Growponics o parte recurrente) mediante el *Recurso de Revisión* de epígrafe solicitándonos que revoquemos la *Resolución Final y Orden* emitida por el Programa de CDBG-DR/MIT del Departamento de la Vivienda (Departamento o parte recurrida), el 26 de septiembre de 2025, notificada el 29 de septiembre siguiente. Mediante esta, el Departamento determinó acoger la *Moción de Desestimación por Falta de Jurisdicción* presentada por el Programa Renacer Agrícola de PR-Agricultura Urbana y Rural (Programa Re-Grow, por sus siglas en inglés) (Programa) y; en consecuencia, desestimó por academicidad la *Revisión Administrativa* presentada por Growponics.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen recurrido.

### I.

El 16 de diciembre de 2021, Growponics radicó la solicitud de cualificación para subvención del Programa Re-Grow para la asistencia en la adquisición de infraestructura por $149,567.18.

Dicha solicitud se identificó bajo la nomenclatura PR-RGRW-00828. Transcurridos casi dos (2) años, el 18 de julio de 2023, el Programa emitió una *Notificación de Suscripción No Aprobada* con relación a la Solicitud núm. PR-RGRW-00828. Mediante dicha notificación determinó que la parte recurrente no cumplió con los criterios de suscripción, toda vez que su proyecto no era financieramente viable. Respecto a las razones para determinar la no suscripción, el Programa estableció específicamente que:

> Solicitante es elegible para el Nivel de Adjudicación III, con una subvención máxima de $150,000, basado en ingresos agrícolas reportados de $191,278 en 2021. Se solicita asistencia para la adquisición de infraestructura de finca por $149,567.18. La entidad reporta pérdidas en los años 2019-2021, acumuladas a $511,931 en 2021. Se observa un aumento en las pérdidas anuales entre 2019 y 2021. **Las proyecciones presentadas en el Plan de Negocio muestran a la entidad aún en pérdida durante el primer año y recuperándose de las pérdidas acumuladas luego del cuarto año, por lo que el proyecto no se considera financieramente viable.** [Énfasis nuestro]

Inconforme, el 27 de julio de 2023, Growponics presentó una *Solicitud de Reconsideración* ante el Programa Re-Grow. Arguyó estar en desacuerdo con los criterios que se utilizaron para determinar que su negocio no es viable basado exclusivamente en las planillas contributivas. Ello, pues a su entender dichas planillas desvirtuaban la realidad de la viabilidad financiera de la empresa agrícola. En resumen, esbozó que existen diversos ingresos que no son tributables en las planillas, pero que le hacen viable financieramente; por ejemplo: las subvenciones, subsidios e incentivos del gobierno. Adjuntó varias tablas alegando que, incluidos otros fondos, para los años 2020 y 2022, el ingreso real de la empresa para fines no contributivos era de $685,459 y $126,233 respectivamente. Por último, expuso que, precisamente, la subvención del Programa Re-Grow contribuiría a mejorar el estado financiero del negocio mediante el aumento de la eficiencia de la producción.

El 16 de agosto de 2023, el Programa emitió una *Notificación de Solicitud de Reconsideración Denegada* con relación al petitorio de la parte recurrente. Según adujo en su determinación, "[l]a empresa Growponics-PR, LLC Finca Explora no es elegible, ya que sobrepasa el ingreso máximo permitido para recibir subvenciones y asistencia técnica a través del Programa Renacer Agrícola".

En desacuerdo con lo determinado, el 4 de septiembre de 2023, la parte recurrente presentó una *Solicitud de Revisión Administrativa* ante la División Legal del Programa CDBG-DR/MIT del Departamento. En la misma solicitó la revisión de la antedicha *Notificación de Reconsideración Denegada* en la que se le denegaba la asistencia para la adquisición de infraestructura de la finca. En síntesis, arguyó que las determinaciones del Programa eran de su propia faz contradictorias. Por un lado, establecían que el proyecto no era financieramente viable y; por el otro, que sobrepasaban el máximo de ingresos permitidos. Añadió que los ingresos que se toman en consideración para determinar la elegibilidad son los del año anterior, mientras que las planillas de cinco años anteriores se utilizan para determinar la viabilidad.

Luego de varios incidentes procesales, innecesarios pormenorizar, el 29 de mayo del 2024, se llevó a cabo una vista de estado de los procedimientos. En la misma, el Oficial Examinador determinó que la controversia medular de este pleito versaba sobre el análisis realizado por la recurrida en sus determinaciones para la descalificación de la parte recurrente del Programa Re-Grow. Así también, se le ordenó a la recurrida a expresarse mediante escrito sobre cuáles serían la controversia y el análisis realizado por el Programa al evaluar la reconsideración.

El 11 de junio de 2024, el Programa presentó un escrito intitulado *Moción en Cumplimiento de Orden.* En dicha moción, detalló que la controversia giraba en torno a los documentos de

apoyo presentados por Growponics. A base de estos, resultó que la recurrente era inelegible al exceder el límite de ingresos de $350,000 establecidos en la Sección 4.1 de las Guías del Programa Re-Grow. Agregó que, para determinar que la empresa agrícola se excedió del límite, tomó en cuenta el haber neto (*net worth)* alegado por Growponics para los años 2018-2022 y los promedió para un total de $407,123.20.

El 15 de julio de 2024, Growponics presentó una *Solicitud de Resolución Sumaria*. Mediante esta, en resumen arguyó que no existía controversia sobre hechos materiales y que; evidentemente, a razón de la *Moción en Cumplimiento de Orden,* presentada el 11 de junio de 2024, el Programa confundió los ingresos con el haber neto. Así, argumentó que el límite establecido por el Programa es sobre ingresos, no sobre el haber neto del negocio. En consecuencia, solicitó se declarara *Ha Lugar* a su solicitud de *Revisión Administrativa* mediante *Sentencia Sumaria*.

**El 29 de agosto de 2024, el Programa emitió una *Notificación de Solicitud de Reconsideración Aprobada*.** En la misma adujo haber revisado una alegada solicitud en reconsideración presentada ese mismo día y; tras un análisis exhaustivo, la declaró como aprobada. Asimismo, clasificó el estatus de la solicitud de Growponics como activa, permitiéndole continuar con el siguiente paso, luego de la evaluación con un *underwritter* para la validación del proceso. Ese mismo día, según aducen las partes, la recurrida presentó una moción de desestimación.[1]

Finalmente, el 18 de diciembre de 2025, el Programa presentó un escrito intitulado *Moción Reiterando Desestimación y Sobre otros Extremos*. En esencia, esbozó que la controversia en este caso versaba exclusivamente sobre los criterios y fundamentos esbozados

---

[1] Esta primera moción de desestimación, aunque ambas partes hacen mención a esta, no fue incluida entre sus anejos o apéndices.

sobre su inelegibilidad determinada en la *Notificación de Solicitud de Reconsideración Denegada*, y no sobre los criterios del análisis de suscripción de la recurrente. Por tanto, habiendo concedido la referida reconsideración y declarándole elegible, la controversia se tornó académica. Bajo el mencionado fundamento, solicitó la desestimación del recurso por falta de jurisdicción o; en la alternativa, se le provea un término de treinta (30) días para realizar y notificar el resultado de un nuevo análisis de suscripción.

El 26 de septiembre de 2025, el foro administrativo recurrido emitió la *Resolución Final y Orden* objetada declarando *Ha Lugar* el petitorio desestimatorio del Programa Re-Grow y ordenó el archivo, sin perjuicio, de la *Revisión Administrativa*.

Inconforme con la determinación, el 14 de octubre de 2025, Growponics presentó un escrito intitulado *Reconsideración a Resolución Final y Orden*. Transcurrido en exceso el término para que la agencia pudiera atender la solicitud, el 29 de noviembre de 2025, Growponics acude ante esta *Curia* imputándole al Departamento haber incurrido en los siguientes errores:

ERRÓ LA PARTE RECURRIDA AL DAR HA LUGAR A LA MOCIÓN DE [DESESTIMACIÓN] DEBIDO [A] UNA ALEGADA APROBACIÓN A UNA INVENTADA Y NUNCA EXISTENTE SOLICITUD DE RECONSIDERACIÓN DE LA PARTE RECURRENTE. ANTES DE TENER QUE ESPERAR AÑO Y MEDIO POR LA RESOLUCIÓN FINAL Y ORDEN SE HABÍA ESTADO EN MUY ACTIVO PROCESO ADMINISTRATIVO EN DONDE HABÍA UNA RESOLUCIÓN SUMARIA PREVIAMENTE PRESENTADA Y QUE SE BASABA EN PRUEBA REFLEJADA POR LOS INTERROGATORIOS E INFORME PERICIAL QUE PRESENTARAN LAS PARTES DURANTE EL PROCEDIMIENTO DE PRUEBA.

NO PUEDE HABER UNA RECONSIDERACIÓN DE UN PROCEDIMIENTO ADMINISTRATIVO DE NATURALEZA INFERIOR CUANDO SU DECISIÓN YA ES FINAL Y FIRME Y ESTÁ EN PROCESOS APELATIVOS, ESTO IGUAL QUE UN TRIBUNAL DE PRIMERA INSTANCIA NO PUEDE DECIR QUE HAY QUE DEVOLVERLE EL CASO PARA QUE LO RECONSIDERE CUANDO YA ESTÁ EN EL TRIBUNAL DE APELACIONES.

ERRÓ LA PARTE RECURRIDA EN NO RESOLVER LA SOLICITUD DE RESOLUCIÓN SUMARIA COMO HA LUGAR SEGÚN SOLICITARA LA PARTE RECURRENTE. DE FORMA QUE NO SE BORRARA EL TRACTO DE TRÁMITES Y DESCUBRIMIENTO DE PRUEBA QUE MEDIARON EN EL PROCEDIMIENTO POR SOBRE 4 AÑOS Y SE RESOLVIERA DANDO POR CUMPLIDO EL PROCESO DE ANÁLISIS FINANCIERO("UNDERWRITING").

El 8 de diciembre de 2025, emitimos una *Resolución* en la que, entre otros dictámenes, concedimos a la parte recurrida hasta el 5 de enero de 2026 para presentar su oposición. Tras la concesión de una prórroga, el 7 de enero, el Departamento compareció mediante un *Alegato en Oposición a Recurso de Revisión Judicial.* Por lo que nos damos por cumplidos y; en consecuencia, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

**Revisión judicial de las decisiones administrativas**

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-892 (2008). En el ámbito administrativo, los tribunales apelativos deben conceder una gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Buxó Santiago v. ELA et. als.*, 2024 TSPR 130, 215 DPR ___ (2024). *Specialty et al. II.*, 179 DPR 923, 940 (2010).[2]

No obstante, esta deferencia reconocida a las decisiones de las agencias administrativas habrá de ceder cuando: (1) la misma no esté basada en evidencia sustancial; (2) la agencia erró en la aplicación o interpretación de las leyes y el reglamento; (3) su actuación resulte ser una arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR

---

[2] Véase, también, *Martínez v. Rosado*, 165 DPR 582, 589, (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003); *Transp. Sonell v. Jta. Subastas ACT*, 214 DPR 633, 648 (2024); *Otero Rivera v. USAA Fed. Savs. Bank*, 214 DPR 473, 484 (2024).

743 (2024). Por consiguiente, la revisión judicial de una decisión administrativa se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. Fcias. v. Caribe Specialty et al. II, supra*, a la pág. 940.

En este ejercicio, nuestro más alto foro ha sido enfático en que las determinaciones de hechos de organismos y agencias públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca suficiente evidencia para derrotarla. *Camacho Torres v. AAFET,* 168 DPR 66, 91 (2006). Quien las impugne tiene el deber insoslayable, para prevalecer, de presentar ante el foro judicial la evidencia necesaria que permita, como cuestión de derecho, descartar la presunción de corrección de la determinación administrativa. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. *Íd.*

Como corolario a lo anterior, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAUG), Ley núm. 38-2017, 3 LPRA sec. 9675, dispone que las determinaciones de hechos realizadas, por una agencia administrativa, serán sostenidas por el tribunal revisor si se encuentran respaldadas por evidencia suficiente que surja del expediente administrativo al ser considerado en su totalidad. *Pacheco v. Estancias,* 160 DPR 409, 432 (2003). De modo que, la parte afectada, deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota,* 163 DPR 716, 728 (2005). En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.

*Íd.*

Por otro lado, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, Ley núm. 38-2017, *supra.* Sin embargo, ello "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota*, supra, a la pág. 729. Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.*

En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio cuando no pueda encontrar una base racional para explicar la determinación administrativa. *ECP Incorporated v. OCS,* 205 DPR 268, 282 (2020); *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006), citando a *Otero v. Toyota*, supra.

### III.

En esencia, mediante sus tres señalamientos de error, la parte recurrente arguye que el Departamento incidió al determinar la desestimación de la *Revisión Administrativa* tras la aprobación de una reconsideración realizada por el Programa. Ello, al reconocer que había errado en establecer la inelegibilidad de Growponics y, como consecuencia de esta acción, no declarar *Ha Lugar* a su *Solicitud de Resolución Sumaria.* Ordenando así la continuación del proceso en la próxima fase de análisis de suscripción. Por encontrarse estrechamente relacionados entre sí, discutiremos en conjunto los señalamientos de error.

De entrada, advertimos que la parte recurrente sometió un apéndice totalmente desorganizado, dificultando el análisis de la cronología de los eventos. Asimismo, el Departamento de la Vivienda incluyó uno incompleto. De hecho, en su escrito en oposición, hasta

omite hechos en su trasfondo procesal sobre lo relacionado a la presentación de la *Reconsideración de la Resolución Final y Orden.* No habiendo la recurrida rebatido la alegación de que la *Reconsideración de la Resolución Final y Orden* fuera acogida o rechazada, dentro del término establecido en ley, la damos por cierta y asumimos jurisdicción, toda vez que la recurrente presentó el recurso en término.

Por otro lado, contrario a lo que supone la parte recurrente, como regla general las Reglas de Procedimiento Civil no le son aplicables automáticamente a las agencias. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 840 (2021); *Martínez v. Tribunal Superior,* 83 DPR 717, 721 (1961). Esto, pues la norma general responde a la necesidad de que los organismos administrativos funcionen sin la inflexibilidad que generalmente caracteriza a los tribunales. *SLG Saldaña-Saldaña v. Junta,* 201 DPR 615, 623 (2019). No obstante, aun cuando le fueran de aplicabilidad, lo cierto es que el análisis que realiza la parte recurrente no es correcto en derecho.

La Regla 52.3(a) de las de Procedimiento Civil, 32 LPRA Ap. III, R.52.3a, es clara en que se suspenderán los procedimientos **judiciales** ante la presentación de un **recurso de apelación contra una Sentencia del Tribunal de Primera Instancia.** Dicha regla regula específicamente el recurso de apelación, nada dispone sobre los recursos de revisión judicial de una determinación de una agencia. El recurso de revisión judicial es el mecanismo adecuado con el que se recurre de una **resolución final de una agencia administrativa.**

Lo mismo sucede, precisamente, con la Regla 18 de nuestro Reglamento, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 36, 215 DPR ___, (2025). La referida norma no da paso a ambigüedades, su letra es clara sobre el **efecto de la**

**presentación del escrito de apelación en casos civiles,** donde la **presentación del escrito de apelación** suspenderá todos los procedimientos **en el Tribunal de Primera Instancia respecto a la sentencia.** Esta Regla va dirigida a lo establecido en nuestro cuerpo normativo exclusivamente sobre **la presentación de las apelaciones contra las sentencias dictadas en casos civiles por el Tribunal de Primera Instancia.**

En este sentido, reafirmamos que los argumentos de equiparar el proceso apelativo interno de una agencia con el proceso apelativo judicial son incorrectos en derecho. Esto, máxime cuando Growponics pretende que se paralicen todos los procedimientos adjudicativos en la agencia por el mero hecho de haber presentado una revisión administrativa dentro del mismo ente gubernamental. Por ende, acceder a lo pretendido iría en contra de la necesidad de que los organismos administrativos funcionen sin la inflexibilidad que generalmente caracteriza a los tribunales. *SLG Saldaña-Saldaña v. Junta,* supra.

Como bien arguye el Departamento en el *Alegato en Oposición...,* a la pág. 21, "... a diferencia de lo que plantea la Parte Recurrente, la determinación adversa del Programa Re-Grow no adviene final y firme si es cuestionada mediante una reconsideración al Programa o una revisión administrativa, como ocurrió en este caso."

Así pues, conforme a la normativa previamente esbozada, entendemos necesario precisar que los efectos de una revisión o apelación interna no tiene el mismo alcance cuando se trata de la presentación de una revisión judicial, ni menos de una apelación ante este foro intermedio para examinar las determinaciones finales emitidas por los organismos gubernamentales recurridos y los tribunales inferiores, respectivamente. Por ello, reiteramos que la pretensión de Growponics es una contraria a derecho.

Ahora bien, en el caso ante nuestra consideración, luego de realizar un análisis de suscripción, el Programa emitió una *Notificación de Suscripción No Aprobada* en la que determinó que la empresa agrícola no era financieramente viable. Ante esa decisión, la parte recurrente presentó una reconsideración en la que incluyó información económica adicional para sustentar su viabilidad financiera. Así las cosas, ante los nuevos documentos y alegaciones financieras, el Programa estableció mediante una *Notificación de Reconsideración Denegada* que la empresa, en lugar de no cumplir con los criterios de suscripción, realmente no era elegible por exceder el límite de ingresos impuestos por la normativa que establece la asignación de los fondos.

Inconforme con esta última determinación, fue que la empresa agrícola acudió en revisión administrativa ante el Programa de CDBG-DR/MIT del propio Departamento. Eventualmente, y dentro del procedimiento apelativo interno, el Oficial Examinador y las partes coincidieron en que la controversia versaba sobre el análisis realizado para determinar la no elegibilidad de Growponics. Luego, **aun sin haberse concluido la revisión apelativa interna**, **el Programa emitió una nueva determinación reconsiderando su anterior determinación donde estableció que la parte recurrente era elegible**. **Ello, tras razonar que habían errado en el análisis del cómputo sobre los ingresos como criterio para la elegibilidad.**

Ahora bien, debemos aclarar que, aun cuando la parte recurrida mencionó que la reconsideración de la determinación de inelegibilidad fue motivada a solicitud de parte, en su escrito en oposición ante esta *Curia* reconoce que fue realizada *motu proprio*. Al respecto, expuso que el Departamento le solicitó al Programa Re-Grow que evaluara el informe compartido y las alegaciones de la parte recurrente, determinando finalmente el Programa, que habían

cometido el error que concedió la causa para la revisión ante la misma agencia.

Enfatizamos que, en nuestro ordenamiento jurídico, es norma reiterada que una agencia se puede corregir en cualquier momento. Todos los organismos administrativos tienen el poder inherente para revisar sus decisiones. *Martínez v. Tribunal Superior*, supra. A toda agencia le asiste la facultad para, en cualquier momento, reconsiderar sus órdenes y resoluciones en ánimo de corregir un error. Un error administrativo no crea un estado de derecho que obligue a una agencia, ni impide su corrección posterior. *Santiago v. Dpto. de la Familia,* 153 DPR 208 (2001). Esto anima y promueve la acción para que la propia agencia pueda rectificar sus errores, ya sea *motu proprio* o a instancia de parte. Por lo tanto, si una agencia administrativa se equivoca en la aplicación de alguna ley, **la agencia puede corregir el error cometido**. *Del Rey v. J.A.C.L.,* 107 DPR 348, 355-356 (1978). Esto se debe a que, en nuestra jurisdicción, la defensa de *estoppel* o actos propios no prosperan contra el estado. *Vives v. Junta,* 24 DPR 669 (1916).

Por consiguiente, nos es forzoso concluir que la parte recurrida no incurrió en ninguno de los errores señalados. Reiteramos que el Programa tiene la facultad para revisar sus determinaciones en cualquier momento mientras ostente jurisdicción sobre el asunto. Además, la determinación final del Programa concede la solicitud primaria de Growponics respecto a que mediante esta se corrigieron los dictámenes donde se declaró a la empresa agrícola inelegible para la subvención peticionada. Por ello, el Departamento actuó correctamente al razonar, en el dictamen recurrido, que la controversia sobre la elegibilidad de Growponics dejó de existir y; en consecuencia, no resolver la *Solicitud de Resolución Sumaria* instada por la empresa.

De otro lado, no podemos acceder a lo argumentado por la parte recurrente en la *Solicitud de Resolución Sumaria*, respecto a que, una vez se le determinó elegible, le corresponde la subvención por la cuantía peticionada sin mayor trámite ante el Programa. Coincidimos con el Departamento cuando expresa que, una vez se determina la elegibilidad, corresponde al Programa llevar a cabo el proceso de suscripción[3] a base de los documentos presentados en la impugnación que realizó la parte recurrente y los requisitos dispuestos en las Guías del Programa. Esto, para luego determinar el monto de la subvención a ser adjudicada.[4]

En fin, Growponics no demostró ni colocó a esta *Curia* en posición de entender que el Departamento actuó arbitraria, ilegal o irrazonablemente, de manera que su actuación constituya un abuso de discreción. Por el contrario, mientras la agencia aún poseía jurisdicción, reconsideró su dictamen y resolvió conforme a derecho en favor de Growponics.

**IV.**

Por los fundamentos anteriormente expuestos, procedemos a confirmar la *Resolución Final y Orden* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones

---

[3] Véase, la Sección 6.1 y la Sección. 6.1.7 de las Guías de Programa Renacer Agrícola de Puerto Rico -Agricultura Urbana y Rural. En primer lugar, la Sección 6.1 establece que luego de la determinación de elegibilidad, se deberá completar un proceso de suscripción y luego uno de determinación del monto. Por su parte, la Sec. 6.1.7, establece que el programa reconoce la existencia de varios niveles de revisión de las solicitudes, entre los que se encuentra el proceso de suscripción con un listado de criterios diferentes a los del proceso de elegibilidad.

[4] Según surge del expediente, este proceso ha tenido adelantos que van desde que el recurrente proveyó, entre otras cosas, su Plan de Negocio Actualizado y sus planillas de los años 2023 y 2024 e, incluso, la visita del agrónomo del Programa a la finca de éste el 14 de noviembre de 2025, para evaluarla.